UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
AGROSCI, INC.,

                    *Plaintiff,*

v.                                              No. 1:21-cv-1275

MARK PRESCOTT and AIR8GREEN, LLC,

                    *Defendants.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

FOLEY HOAG LLP                        BENJAMIN H. WEISSMAN, ESQ.
*Attorneys for Plaintiff*             KRISTYN DeFILIPP, ESQ.
1301 Sixth Avenue, 25th Fl.
New York, New York 10019

NOLAN HELLER KAUFFMAN LLP             MATTHEW M. ZAPALA, ESQ.
*Attorneys for Defendant Mark Prescott*
80 State Street, 11th Fl.
Albany, New York 12207

LIPPES MATHIAS LLP                    CONOR E. BROWNELL, ESQ.
*Attorneys for Defendant Air8Green, LLC*
54 State Street, Suite 1001
Albany, New York 12207

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## I.  <u>INTRODUCTION</u>

Plaintiff AgroSci, Inc. ("AgroSci," the "Company," or "plaintiff") brings this action against defendants Mark Prescott ("Prescott") and Air8Green, LLC ("Air8Green" and, together with Prescott, "defendants").  Plaintiff asserts claims for breach of various contracts against both defendants, breach of fiduciary duty against Prescott, tortious interference against Air8Green, and unjust enrichment against Air8Green.

Defendants have each moved to dismiss AgroSci's amended complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and the motions have been fully briefed.  The Court will now consider the parties' motions on the basis of the submissions without oral argument.

## II. <u>BACKGROUND</u>[1]

Founded in May 2011, AgroSci designs and installs premium green walls and "plantscapes" across various architectural features, such as interior and exterior walls.  Dkt. 31 ("AC") ¶ 8.  Prescott served as an officer of the Company from its founding until November 2018.  *Id*. ¶ 9-11.

On July 24, 2011, AgroSci and Prescott entered into a Non-Disclosure, Non-Competition and Assignment of Intellectual Property Agreement

---

[1] The facts are taken from the amended complaint and any and all documents attached to it, because for the purposes of a Rule 12(b)(6) motion, this Court must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff[.]"  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012).

("Assignment and NDA"), which imposed certain obligations on Prescott "as a condition of his continued association with AgroSci" as "an employee, director, officer, consultant, advisor or independent contractor."  AC ¶ 13; *id.*, Ex. A (attaching copy of Assignment and NDA), p. 1.[2]  One such obligation was that Prescott would not "engage in any other business activity that conflicts with [his] duties to the Company."  Assignment and NDA § 5. Moreover, Prescott agreed to avoid conflicts of interest, to disclose potential conflicts to plaintiff's board of directors, and to not compete with the Company during his association and for one year thereafter.  *Id.* §§ 5, 9. Prescott further agreed that he would "make full and prompt disclosure to the Company" of his inventions in the course of his association with the Company, and agreed to assign and transfer to the Company all rights in any such invention.  *Id.* § 6.

One of Prescott's inventions was a pressurized growing air system for vertical and horizontal plant systems (the "Aerogation IP").  AC ¶ 14. AgroSci alleges that, despite his obligation to assign the rights to the Aerogation IP to the Company pursuant to § 6 of the Assignment and NDA, Prescott instead pursued patent protection in his own name and used

---

[2]  Plaintiff inadvertently failed to include Exhibits A through D of the amended complaint when filing it.  Plaintiff previously filed these documents as exhibits to the original complaint, *see* Dkt. 2, and has now refiled and attached them to its opposition brief, *see* Dkt. 41, 42.  For ease of reference, and because the exhibits for these filings are identical in order and substance, the Court simply cites these documents as exhibits to the amended complaint.

Company funds to do so – all while keeping his efforts secret from the Company. *Id.* ¶ 15.

On February 1, 2013, Prescott and AgroSci entered into the Intellectual Property Retention Agreement ("IPRA") whereby the parties agreed that, despite Prescott's alleged breach of his obligation to assign all rights to the Aerogation IP to plaintiff pursuant to the Assignment and NDA, Prescott would retain the rights to the Aerogation IP. AC ¶ 16; *see generally id.*, Ex. B (attaching copy of IPRA). The IPRA provided that "[n]otwithstanding anything to the contrary contained in the [Assignment and NDA], Prescott shall retain all right, title and interest to" the Aerogation IP, while AgroSci "shall have no rights in or to" the Aerogation IP. IPRA § 1.

The IPRA also provided a right of first refusal for AgroSci to obtain the Aerogation IP (referred to in that agreement as the "Excluded IP") should Prescott "at any time . . . desire[] to assign, sell, license or otherwise transfer" the Aerogation IP. IPRA § 2. This right of first refusal required Prescott to provide notice to plaintiff of any proposed transfer of the Aerogation IP. *Id.* Per the IPRA, Prescott could only transfer the Aerogation IP to a third party in the event that he and plaintiff could not agree on terms for the Company's purchase of the Aerogation IP, and then "only on terms no more favorable than the terms offered to" plaintiff. *Id.*

On October 19, 2015, Prescott and AgroSci entered into a licensing agreement with respect to the Aerogation IP (the "2015 Licensing Agreement").  AC ¶ 18; *see generally id.*, Ex. C (attaching copy of 2015 Licensing Agreement).  The 2015 Licensing Agreement granted plaintiff an exclusive, worldwide license to "research, develop, manufacture, have manufactured, use, import, export, sell and offer to sell products relating to" the Aerogation IP.  2015 Licensing Agreement § 2.1.  In exchange for the license, the Company agreed to pay Prescott, among other things, a monthly licensing fee and a 10% royalty fee on products shipped outside the United States.  *Id*. § 2.2.  The 2015 Licensing Agreement had a term of 20 years and could be terminated upon an uncorrected breach.  *Id*. §§ 4.1, 4.3.  The 2015 Licensing Agreement made no reference of the Assignment and NDA or the IPRA.

The 2015 Licensing Agreement was not the only licensing agreement that the parties executed.  On March 15, 2018, Prescott and AgroSci signed the Superseding Licensing Agreement ("SLA").  AC ¶ 19; *see generally id.*, Ex. D (attaching copy of SLA).  The SLA's first page indicated that its purpose was to "terminate the [2015 Licensing Agreement] and replace it with [the SLA]" and for the Company "to obtain rights to use [Prescott's] apparatus, system and method for pressurized vertical and horizontal planting systems and a license to [Prescott's] Technology."  SLA, p. 1.  Through the SLA, Prescott

granted plaintiff an "exclusive, personal, royalty-bearing license" to "make, manufacture, have manufactured, use, import, export, sell, and offer to sell" the Aerogation IP in the United States and Canada.  *Id*. § 3.1.  Prescott also granted plaintiff a limited license to use the Aerogation IP in Europe. *Id*. § 3.2.  In exchange for these licenses, plaintiff agreed to pay Prescott an annual licensing fee and certain royalty fees.  *Id*. §§ 3.6(b), 3.6(c).

The SLA also contained an integration clause, which provided that the SLA "[embodied] the entire understanding of [Prescott] and [AgroSci] with respect to the subject matter herein and [replaced] any and all prior agreements regarding same."  SLA § 14.1.  As with the 2015 Licensing Agreement, the SLA did not reference the Assignment and NDA or the IPRA.

Moreover, the SLA contained mutual releases of claims between AgroSci and Prescott.  According to plaintiff, Prescott agreed to release the Company from "any and all existing claims arising out of" the 2015 Licensing Agreement, and the Company agreed to release Prescott from "any and all claims arising out of" the 2015 Licensing Agreement and/or Prescott's "duties, obligations, and responsibilities as an officer, director and/or shareholder of" the Company.  SLA §§ 11.3, 11.4.

Relatedly, the SLA noted that the parties intended the SLA "to be a final resolution of all claims."  SLA § 11.1.  To that end, the SLA included a general mutual release, whereby Prescott and AgroSci agreed to "irrevocably

6

waive[], release[], and discharge[], absolutely and forever, [the other party] from any and all liabilities [to the other party] of any kind and nature whatsoever . . . ." *Id*. §§ 11.5, 11.6.

In the event that Prescott sold rights to the Aerogation IP to a third party, the SLA provided that he "assign and transfer the obligations imposed on [him]" under the SLA to the third-party purchaser.  SLA § 4.4.

Lastly, the SLA noted that AgroSci funded research studies by the University of Staffordshire and ECO Advisors, LLC.  SLA § 3.10.  Prescott agreed that "the data collected during that research [would] not be distributed to third parties without [plaintiff's] permission."  *Id*.

On July 11, 2018, Prescott entered into an assignment agreement (the "Air8Green Assignment") with Air8Green.  AC ¶¶ 21, 24.  Through the Air8Green Assignment, Prescott purported to transfer the Aerogation IP to Air8Green in exchange for becoming a part owner of Air8Greeen.  *Id*. According to plaintiff, Air8Green's only member other than Prescott is RSGreenstreet, LLC ("Greenstreet").  *Id*. ¶ 3.  AgroSci alleges that when Prescott assigned the Aerogation IP to Air8Green, he also purported to assign the SLA to Air8Green, meaning that Air8Green would step into the shoes of the licensor.  *Id*. ¶ 35.  Prescott did not notify plaintiff of his desire to assign the Aerogation IP or the SLA to Air8Green, and the Company did not learn about these purported assignments until around November of 2019.

7

*Id.* ¶¶ 21, 22.  Plaintiff also alleges that Prescott did not offer to sell the Aerogation IP to AgroSci on the same terms that he offered to Air8Green, that Air8Green knew that Prescott developed the Aerogation IP while associated with plaintiff, and that plaintiff had rights related to the Aerogation IP.  *Id.* ¶¶ 23-25.

Around September 2018, Prescott shared the research that AgroSci funded, which plaintiff alleges is referenced in SLA § 3.10.  AC ¶¶ 26-28, 64.  Prescott purported to authorize Air8Green to use that research to market a new product known as "Breth," which plaintiff alleges is based on the air purification techniques resulting from the research it funded.  *Id.* ¶¶ 29, 64.  Air8Green launched crowdfunding campaigns on Kickstarter and Indiegogo to raise funds for Breth's marketing and development; these campaigns claimed that Air8Green had done certain work that was actually done by AgroSci, including that "we developed the patented technology behind [Breth] in 2013."  *Id.* ¶¶ 29-30.  Plaintiff alleges that Air8Green did not even exist in 2013, and that the "patented technology" refers to the Aerogation IP, which Prescott developed while affiliated with the Company.  *Id.* ¶ 30.

Moreover, AgroSci alleges that Air8Green's crowdfunding campaigns relied on certain Company-funded research that the SLA prohibited Prescott from disclosing or using.  AC ¶ 31.  According to plaintiff, Air8Green used

this research and relied on misrepresentations as to the source of the

Aerogation IP to raise more than $240,000. *Id.* ¶ 32.

For months after Prescott's purported assignment of the SLA to

Air8Green, AgroSci continued to pay him royalties in accordance with the

SLA. AC ¶ 36. Plaintiff alleges that Prescott did not remit these license

payments to Air8Green, despite having purported to assign to Air8Green the

rights to receive such license payments under the SLA. *Id.* ¶ 37.

Once AgroSci learned of Prescott's purported assignments of the

Aerogation IP and the SLA, it notified Air8Green of its objection to

Air8Green's assumption of the SLA via two letters dated June 23, 2020 and

July 23, 2020. AC ¶ 38. In those letters, plaintiff also gave Air8Green notice

that its use of the Company's research to market Breth violated the SLA.

*Id.* ¶ 39. Due to what it believed was Prescott's breach of the IPRA and SLA,

and Air8Green's violation of the SLA, plaintiff withheld payment of its

royalty fees until it ultimately terminated the SLA by letter dated September

3, 2020. *Id.* ¶ 40.

On October 1, 2021, AgroSci brought this case in New York Supreme

Court, Rensselaer County. Air8Green removed the action to this Court on

November 30, 2021. Dkt. 1. Plaintiff filed an amended complaint on April 5,

2022. Dkt. 31. Defendants moved to dismiss the amended complaint on May

20, 2022.  Dkt. 34, 36.  After several extensions, the matter became fully briefed on August 29, 2022.  Dkt. 49, 50.

## III. <u>LEGAL STANDARD</u>

"To survive a Rule 12(b)(6) motion to dismiss, the 'factual allegations must be enough to raise a right to relief above the speculative level.'"  *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Instead, the complaint must contain sufficient factual matter that it presents a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing the plausibility of a complaint, it is "to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor."  *Ginsburg*, 839 F. Supp. 2d at 540.  The complaint may be supported by "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citation omitted).

## IV. <u>DISCUSSION</u>

AgroSci brings six causes of action: breach of the Assignment and NDA against Prescott (Count I); breach of the IPRA against Prescott (Count II); breach of the SLA against Prescott and Air8Green (Count III) ; breach of fiduciary duty against Prescott (Count V); tortious interference against

Air8Green (Count VI); and unjust enrichment against Air8Green (Count VII).[3]  Defendants, for their part, move to dismiss each of the respective causes of action against them.

### 1. The SLA does not Preclude Plaintiff's Claims in Counts I, II, VI, and VII

Defendants argue that AgroSci cannot maintain any claims based on either the Assignment and NDA or the IPRA (Counts I and II as to Prescott and Counts VI and VII as to Air8Green) because the SLA: (i) replaced both of these agreements pursuant to its integration clause; and (ii) released all claims and liabilities against defendants.  Each of these arguments fail.

First, defendants assert that the SLA operates as an "elimination and replacement of Prescott's prior agreements and obligations" to AgroSci, including the Assignment and NDA and the IPRA.  According to defendants, this replacement means they can no longer be held liable for claims based on post-SLA breaches of the Assignment and NDA or the IPRA.  The Court cannot conclude from the SLA's face whether the parties intended for it to replace the Assignment and NDA or the IPRA, and therefore disagrees.

Under New York law, "a novation is a new contract replacing and extinguishing a prior contract." *Donnenfeld v. Petro, Inc.*, 333 F. Supp. 3d 208, 217 (E.D.N.Y. 2018) (citation omitted).  "[I]t is well-established that

---

[3] The Court notes that plaintiff erroneously failed to enumerate a Count IV.

whether a novation exists depends on the parties' intention." *Id.* (citations omitted). If the parties "have manifested their intent on the face of the document, the court can make this determination as a matter of law." *C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 434 (S.D.N.Y. 2005). However, "[w]hen what the parties intended cannot be 'definitely and precisely gleaned' from a reading of the contract, they should be afforded an opportunity to present extrinsic evidence to establish their intent." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (internal citation omitted).

AgroSci and defendants predictably offer competing interpretations of the "plain meaning" of the SLA. On one hand, defendants point to SLA § 14's integration and modification provision, which states that the SLA "replaces any and all prior agreements regarding [the subject matter of the SLA]" and submit that § 14 clearly establishes that the parties intended the SLA to constitute a novation. Relatedly, defendants argue that: (i) the SLA embodies the same subject matter as both the Assignment and NDA and the IPRA; (ii) that the SLA was an attempt to resolve disputes between the Company and Prescott about whether the latter should have owned the Aerogation IP; and (iii) that the SLA clearly grants ownership of the Aerogation IP to Prescott.

Conversely, AgroSci asserts that the SLA contains no definitive language reflecting the parties' intent to supersede the Assignment and NDA or the

IPRA.  Plaintiff notes that the parties had definitively referenced a different earlier contract in the SLA for the purposes of superseding it (the 2015 Licensing Agreement), but that the SLA is silent as to the Assignment and NDA and the IPRA.  Additionally, plaintiff argues that the SLA does not concern the same subject matter as the Assignment and NDA and the IPRA. In plaintiff's view, the Assignment and NDA governs the terms of Prescott's association with the Company, and the IPRA addresses ownership of the Aerogation IP as well as the Company's right of first refusal to purchase this IP.  In other words, according to plaintiff, neither the Assignment and NDA nor the IPRA addresses terms for licensing the Aerogation IP.  Lastly, plaintiff argues that any purported conflicts between the prior agreements and the SLA do not negate Prescott's obligations under the Assignment and NDA or the IPRA.

Upon review, each side's theory is reasonable, and it is unclear from the face of the agreement whether the parties definitively intended to revoke, cancel, or supersede the Assignment and NDA or the IPRA.  Accordingly, the Court cannot divine the parties' intentions as a matter of law on these motions to dismiss.  *See Donnenfeld*, 333 F. Supp. 3d at 217 (denying motion to dismiss where the court could not determine whether the parties' intended for subsequent agreement to act as a novation from the face of the agreement); *see also D.S. Am. (E.), Inc. v. Chromagrafx Imaging Sys., Inc.*,

873 F. Supp. 786, 794 (E.D.N.Y. 1995) (denying motion to dismiss where "[t]he parties' intention as to whether [a subsequent agreement] was intended to supersede [an earlier agreement], and extinguish any alleged existing liability [ ] thereunder, cannot be determined as a matter of law at this stage of the action"). The parties will have the chance to present extrinsic evidence to establish their intent after the benefit of discovery.

Next, defendants argue that the SLA's section releasing claims and liabilities between the parties warrants dismissal of the same causes of action. For similar reasons as those articulated *supra*, this argument fails.

A release is a form of contract and "is governed by principles of contract law." *Golden Pacific Bancorp v. FDIC*, 273 F.3d 509, 514 (2d Cir. 2001) (quoting *Bank of Am. Nat'l Trust and Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir. 1985)). "Where a contract is ambiguous, it cannot be decided as a matter of law on a motion to dismiss." *Info. Superhighway, Inc. v. Talk Am., Inc.*, 274 F. Supp. 2d 466, 470 (S.D.N.Y. 2003) (citing *Zuckerwise v. Sorceron, Inc.*, 735 N.Y.S.2d 100, 102 (1st Dep't 2001)).

Under New York law, "a release – like any contract – must be construed in accordance with the intent of the parties who executed it." *Info. Superhighway*, 274 F. Supp. 2d at 470 (citing *Golden Pacific*, 273 F.3d at 515). Courts must not give releases effect unless they contain an "explicit, unequivocal statement of a present promise to release … from liability." *Id*.

(citing *Golden Pacific*, 273 F.3d at 515).  Thus, "an ambiguous release may not form the basis for a motion to dismiss."  *Id*.  The language of a contract is ambiguous "if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement."  *Golden Pacific*, 273 F.3d at 516 (citing *Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138-139 (2d Cir. 2000)).

As with the novation issue, the parties offer competing interpretations of the SLA's provisions.  AgroSci asserts, *inter alia*, that SLA § 11.1's proclamation that "[t]he Parties intend this Superseding Licensing Agreement to be a final resolution of all claims" means the release applies only to claims existing at the time the parties executed the agreement, rather than future claims or those that otherwise did not yet exist.  Moreover, plaintiff argues that SLA §§ 11.5 and 11.6 provide shorthand for everything the parties were respectively releasing: the "Licensee Released Claims" or the "Licensor Released Claims."

By contrast, defendants note, *inter alia*, that SLA § 11.5 also released Prescott from "any and all liabilities … of any nature and kind whatsoever …"  Citing to Black's Law Dictionary, 6th Edition, defendants claim "liability" is a broad term that relieved Prescott of his obligations to AgroSci that could have continued – not just those that existed at the time the parties executed the SLA.

Again, each party's interpretation of the SLA is reasonable.  Given its competing plausible meanings, the SLA's release is ambiguous and cannot form the basis of defendants' motions to dismiss.  *See Info. Superhighway*, 274 F. Supp. 2d at 471 (finding release ambiguous, and thus inappropriate to resolve on motion to dismiss, where both parties offered plausible interpretations of its scope); *In re Clinton Street Food Corp.*, 254 B.R. 523, 535 (Bankr. S.D.N.Y. 2000) ("Both parties have offered reasonable interpretations regarding the scope of the release, and these interpretations cannot be resolved on a motion to dismiss").

In sum, because the SLA's provisions related to defendants' novation and release arguments are ambiguous, defendants cannot rely on them to preclude Counts I, II, VI, and VII on their motions to dismiss.

## 2.  Counts I through III

AgroSci brings claims for breach of the Assignment and NDA (Count I), breach of the IPRA (Count II), and breach of the SLA (Count III) against Prescott, as well as breach of the SLA (Count III) against Air8Green. Defendants contend that plaintiff fails to state a claim as to each.  The Court disagrees.

To state a claim for breach of contract under New York law, a plaintiff need only allege: (i) formation of a contract between plaintiff and defendant;

(ii) performance by the plaintiff; (iii) failure by the defendant to perform; and (iv) damages. *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

As to Counts I and II, defendant Prescott claims that AgroSci failed to plead that it performed under the Assignment and NDA and the IPRA. With respect to the former contract, plaintiff's performance simply involves its employment of Prescott. *See* Assignment and NDA at 1 ("In consideration and as a condition of my association or continued association with AgroSci … I, Mark Prescott, agree as follows …"). The Amended Complaint alleges that Prescott worked for plaintiff for more than seven years, served as an officer, and sat on the board of directors. AC ¶¶ 9-11. The Amended Complaint further alleges that, during his employment with plaintiff, Prescott held himself out to business contacts, including individuals affiliated with Air8Green, as a representative and/or affiliate of the Company. *Id.* ¶ 12. With respect to the latter contract, Prescott agreed that he received plaintiff's consideration for his promises. *See* IPRA at 1 (for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged …"). Moreover, the Amended Complaint alleges that, as contemplated by the parties, plaintiff agreed to release its ownership claim to the Aerogation IP.

AC ¶ 16.  These allegations are sufficient to withstand Prescott's motion to dismiss.[4]

As to Count III, Prescott argues that AgroSci failed to adequately allege its performance under – or his breach of – the SLA.  Upon review, the Court agrees in part with Prescott, but ultimately finds that plaintiff has sufficiently alleged breach.

In support of its claim, AgroSci alleges two distinct breaches of the SLA.  First, plaintiff alleges that "Prescott purported to assign the SLA to Air8Green in or around September 2019" and "[t]hat purported assignment was in violation of the SLA's notice provision."  AC ¶ 61; *see also id.* ¶ 36.  Plaintiff's allegations with respect to breach of a "notice provision" come up short.  As Prescott notes, although plaintiff references breach of a notice provision, the Amended Complaint makes no other mention of such a provision, its corresponding section in the SLA, or its specific terms.  Moreover, the Court's own review of the SLA did not even reveal a notice provision that would correspond with plaintiff's allegations.  *See generally* SLA.  To sufficiently plead breach of contract, a plaintiff must identify the specific contractual provisions that a defendant breached.  *See, e.g., Belfon v.*

---

[4] Prescott also asserts that plaintiff fails to plead breach of the Assignment and NDA because its: (i) allegations rely on Prescott's breach of the IPRA; and (ii) because it only alleged "purported" assignments or authorizations, which cannot establish breach.  Perhaps tellingly, defendant fails to offer any authority or explanation for why either of these arguments justifies dismissal, and the Court rejects them.

*Credit Check Total Consumerinfo.com, Inc.*, 2018 WL 4778906, at \*5 (E.D.N.Y. Oct. 1, 2018) (collecting cases).  Plaintiff's failure to do so with respect to the purported notice provision means this alleged breach cannot form the basis of his breach of contract claim.

AgroSci's allegations concerning both Prescott and Air8Green's breach of § 3.10 of the SLA fare better.  Plaintiff alleges that defendants breached § 3.10 by using research funded by the Company without its permission. AC ¶¶ 66-67.  Defendants take issue with plaintiff's lack of allegations tying defendants' misuse of its research to certain terms in § 3.10, such as "distribution" and "data."  However, drawing all inferences in plaintiff's favor and construing the Amended Complaint liberally, it presents a plausible claim that Prescott improperly distributed the information covered by § 3.10 to Air8Green in breach of the SLA, and that Air8Green used this information in its marketing materials without plaintiff's written permission.  *See id.* ¶¶ 35-36; 64-67.

As to AgroSci's performance, the Amended Complaint states, and the SLA reflects, that the Company's obligation under the agreement was to pay royalties.  AC ¶ 18; SLA § 3.6.  Plaintiff alleges that it paid Prescott in accordance with the SLA's royalty provisions for months after his purported assignment to Air8Green.  AC ¶ 36.  Prescott's purported assignment to Air8Green took place in September 2019.  *Id.* ¶ 61.  Since defendants' alleged

breach of SLA § 3.10 must have occurred sometime before September 2018, which is when Air8Green allegedly began a marketing campaign using research funded by plaintiff, *see id*. ¶¶ 64-65, the Amended Complaint alleges that plaintiff was paying royalties (and thus performing) at the time of the breach.

Accordingly, Counts I through III of the Amended Complaint survive dismissal.

### 3. Count V

AgroSci brings a claim for breach of fiduciary duty against Prescott alleging that he violated his duty of loyalty by self-dealing and placing his own interests and those of Air8Green above those of the Company.  Prescott seeks to dismiss this cause of action for failure to state a claim.  The Court agrees that dismissal is appropriate.

Under New York law, the elements of a cause of action for breach of fiduciary duty are: (i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.  *Johnson v. Nextel Communications, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011).

Prescott argues that AgroSci fails to allege the existence of an actionable fiduciary duty under the SLA because under § 11.2, he resigned as an officer of the Company as of March 15, 2018 and each of his alleged breaches occurred after this date.  *See* AC ¶ 72.  The Court agrees.  Plaintiff's sole

citation to out-of-circuit state court authority from Louisiana for the proposition that Prescott can still be held liable for breach of fiduciary duty for actions taken after he resigned is unpersuasive. Put simply, Prescott was no longer an officer of the Company at the time of the alleged breaches, and Count V thus fails to establish the existence of a fiduciary duty. Accordingly, it must be dismissed.

### 4. Count VI

In Count VI of the Amended Complaint, AgroSci alleges tortious interference of the Assignment and NDA and the IPRA against Air8Green. In seeking dismissal of this claim, Air8Green relies on its novation arguments, which the Court has already addressed. For the reasons outlined *supra* § IV.1, defendant's novation arguments fail and its motion to dismiss Count VI will be denied.

### 5. Count VII

Finally, in Count VII of the Amended Complaint, AgroSci brings a claim against Air8Green for unjust enrichment on the theory that the crowdfunding money it raised was inequitably collected at plaintiff's expense. Air8Green seeks dismissal for failure to state a claim. The Court disagrees that dismissal is appropriate.

Under New York law, to state a cause of action for unjust enrichment, a plaintiff must show: (i) that the other party was enriched; (ii) at the plaintiff's

expense; and (iii) that it is against equity and good conscience to permit the other party to retain what plaintiff seeks to recover. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011).

Upon review, AgroSci's allegations are sufficient to survive a motion to dismiss. Plaintiff alleges that Air8Green was enriched through collecting crowdfunding contributions at the Company's expense. AC ¶ 85. According to plaintiff, Air8Green's enrichment came at the Company's expense because defendant concealed its purported ownership of the Aerogation IP, misrepresented that it had done work that was actually done by plaintiff and to which it had no rights, and used that research to develop and market a competing product, which was substantially derived from research funded by plaintiff. *Id*. ¶ 84. In simplest terms, plaintiff asserts that it provided a benefit to Air8Green and defendant did not adequately compensate it for that benefit. Construing the Amended Complaint liberally and drawing all reasonable inferences in favor of plaintiff, these allegations are sufficient for plaintiff to sustain its burden at this stage. *See Am. Bldg. Maint. Co. of New York v. Acme Prop. Servs., Inc.*, 515 F. Supp. 2d 298, 313 (N.D.N.Y. 2007) (denying motion to dismiss unjust enrichment claim where plaintiff pleaded that it had bestowed a benefit upon defendants and was not adequately compensated for such benefit).

Accordingly, Air8Green's motion to dismiss Count VII will be denied.

**6. Joinder**

Finally, Air8Green argues that Greenstreet, one of its members, is a necessary party to this case, and that the proper remedy is dismissal of the Amended Complaint.  In support, defendant relies on a purported "Contribution Agreement," which does not appear in the Amended Complaint or as an exhibit to it.  Air8Green claims that plaintiff references this agreement indirectly throughout the Amended Complaint, mainly where it discusses Prescott's alleged transfer of the Aerogation IP to Air8Green.

However, without more, it is unclear whether plaintiff's allegations even concern the same agreement defendant refers to in its dismissal motion.  This is particularly true because there are no allegations matching what defendant claims the Contribution Agreement covered – Prescott's exchange of the Aerogation IP for a minority interest in Air8Green, as well as Greenstreet's provision of loans, capital, and sweat equity to Air8Green. Thus, the Court cannot determine whether plaintiff relied on any such Contribution Agreement when drafting the Amended Complaint and rejects Air8Green's joinder argument.  *See Vail v. Bellnier*, 2020 U.S. Dist. LEXIS 105652, at *35-36 (N.D.N.Y. June 15, 2020) (declining to consider article not attached to complaint).

**V. <u>CONCLUSION</u>**

Therefore, it is

ORDERED that

1.  Defendant Air8Green's motion to dismiss is DENIED;

2.  Defendant Prescott's motion to dismiss is GRANTED with respect to Count V, and is otherwise DENIED;

3.  Defendants shall file answers to the remaining claims on or before December 20, 2022.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  November 30, 2022
Utica, New York.